IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

_____

MILO RICHARDSON                                                                                    PLAINTIFF

VERSUS                                                                    CIVIL ACTION NO.: 1:10CV2-M-D

PRAIRIE OPPORTUNITY, INCORPORATED
and LAURA A. MARSHALL                                                                         DEFENDANTS
_____

## MEMORANDUM OPINION

This cause comes before the court on the motion **[30]** of Defendants, Prairie Opportunity, Inc. and Laura Marshall, seeking summary judgment.

Milo Richardson was hired by Prairie Opportunity, Inc. in 2003 as program administrator after interviewing with Laura Marshall, the executive director. Richardson worked at Prairie for six years without incident. However, in January 2006, Richardson was laid off due to budgetary restraints of a community service block grant that supports Prairie. Richardson returned to work five months later.

Prairie claims that Richardson's work performance began to deteriorate upon his return. Richardson, however, states that Marshall placed fraudulent documents in his personnel file and refused to approve his merit raises based on gender.

In January 2009 Richardson filed a complaint against Prairie with the Equal Employment Opportunity Commission, alleging the disparate treatment described above.

On or about March 12, 2009 Richardson and Marshall were involved in a heated argument over Marshall's attempt to require Richardson to sign a letter concerning his poor

performance.  Richardson allegedly refused to sign, put his finger in Marshall's face and told her what he was not going to do.  Richardson disputes that he used his hands in a threatening manner.  Prairie suspended Richardson for misconduct and insubordination based on the incident.  Five days later Prairie's board of directors voted to terminate Richardson citing misconduct and refusal to complete his job duties.

Richardson initiated the instant action alleging sex discrimination and retaliation for filing a complaint with the EEOC in violation of Title VII of the Civil Rights Act of 1964.  Additionally, Richardson brought the following supplemental state law claims: malicious interference with employment relations against Defendant Marshall, and breach of contract against Defendant Prairie.  Defendants moved for summary judgment on all claims.[1]

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).  An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986).  In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence.  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed.2d 105

---

[1]Richardson has conceded his breach of contract claim.  Accordingly, this court will only consider the plaintiff's remaining claims.

(2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110.

Claims of gender discrimination are governed by the evidentiary standard adopted in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff has the initial burden of making a *prima facie* case. *Id*. at 802. Once the plaintiff has established a *prima facie* case the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the employment decision. *Id*. at 802-03. If the defendant is able to articulate a legitimate reason for its action the ultimate burden rests on the plaintiff to prove the employment decision was the result of a discriminatory practice. *Id*. at 804.

A plaintiff may make a *prima facie* case for direct discrimination by showing that: (1) he is a member of a protected class; (2) he sought and was qualified for the position in question; (3) he was denied or discharged from that position or suffered some adverse employment action; and, (4) that a person outside his protected class replaced him or a person outside his protected class and with similar qualifications was treated more favorably. *Id*. at 802. Richardson "need only make a very minimal showing" to establish a *prima facie* case. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985) (overruled on other grounds)).

Prairie first argues that Richardson is not a member of a protected class. Prairie relies on *Switzer v. Texas Commerce Bank* for the proposition that the Fifth Circuit requires that Richardson be a member of a minority within his company. 850 F. Supp. 544, 548 (N.D. Tex. 1994). Prairie states that the majority of its board members are male, and concludes that Richardson was not part of a gender minority. However, the board members are simply

representatives of the community and not employees.  Richardson was the only male employed by Prairie at the time of his termination.

Further, in *Byers v. Dallas Morning News*, the court noted that while some Fifth Circuit cases such as *Switzer* require that a plaintiff be a member of a minority within the company, other cases require only that the plaintiff be a member of "a protected group," meaning a group protected under Title VII.  209 F.3d 419, 426 (5th Cir. 2000).  The Court then stated that its opinion in *Singh v. Shoney's, Inc.* "marks a retreat from the 'racial minority' requirement to the 'protected group' requirement for claims under Title VII."  *Id*.  Thus, Richardson could establish this element of gender as a protected class, regardless of whether the board members are considered members of the company.

Richardson must then show that he was qualified to be a program administrator of Prairie.  Prairie argues that Richardson was not qualified for his position due to a decrease in work performance.  However, Prairie deemed Richardson qualified when the company hired him for the position.  Richardson's bachelor's and master's degrees qualified him, regardless of his later work performance.

Richardson's termination on March 19, 2009 is sufficient to establish that he suffered an adverse employment action.

Further, it is undisputed that a male replaced Richardson as program administrator.  Therefore, Richardson must show that he was treated less favorably than a similarly-situated female.  Though no female held Richardson's equivalent position, women did occupy other managerial positions.  Richardson claims that Prairie refused to give him merit raises that these female employees received.  However, in each of the instances where a female director received

4

a raise the employee took over additional duties, obtained a new title, or received further grants on behalf of Prairie.  Further, Richardson was not similarly situated to the other employees who received merit raises.  Each of these employees held a position distinctively different from the managerial position held by Richardson and also took on additional responsibilities in conjunction with receiving a merit raise.

Richardson further claims that in March 2008 the female employees at Prairie received a new computer when he did not.  Richardson overlooks the fact the female employees were excluded from an upgrade when he received a new computer a few months prior.

Richardson next argues that Marshall treated him more harshly than female employees for using profanity.  Marshall suspended Richardson for one day after learning that he allegedly stated, "Goddammit."  However, the record is devoid of any specific instance in which another employee cursed at work and was not given a suspension.  Vague assertions by a female employee that she sometimes used profanity at work and was not suspended are insufficient to determine if Richardson was in fact treated differently, as there is no evidence that the employee's cursing was even reported to Marshall.

Finally, Richardson claims that Marshall placed untruthful documents in his personnel file.  Marshall allegedly did not engage in this practice with respect to any of the female managers' personnel files.  This allegation is at least a minimal showing of disparate treatment and Richardson has established a *prima facie* case for gender discrimination.

The burden then shifts to Prairie to articulate a legitimate non-discriminatory reason for the employment decision.  *McDonnell*, 411 U.S. at 803-03. Defendants maintain that Richardson

was terminated due to misconduct stemming from the incident with Marshall, and refusal to complete job duties.

The ultimate burden rests on Richardson to prove the employment decision was the result of a discriminatory practice. *Id*. at 804. Under Title VII, Richardson must prove that (1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative). *Davis v. Farmers Ins. Exchange*, 372 Fed. App'x 517, 519 (5th Cir. 2010) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

Richardson argues that Marshall's refusal to grant him a merit raise after Prairie's board approved the raises proves that Prairie's reason for termination is untrue. Marshall maintains that she did not approve the raise due to Richardson's poor job performance and because he did not take on additional work responsibilities. This reason is corroborated through third-party complaints of Richardson's failure to execute his job duties and handle reports. Further, the females who received raises began performing additional work duties to warrant such a raise. Richardson has failed to show that he undertook new duties.

Richardson further claims that Prairie's reason is pretextual since Marshall exaggerated to the board regarding the incident for which he was fired. Richardson argues that he simply refused to sign a document that Marshall did not allow him to review. The alleged facts did show that Richardson gestured with his hands and there is no evidence that Marshall's interpretation of a threat was untruthful. Prairie's board relied on the evidence as presented to it and reasonably terminated Richardson based on the known facts without regard to gender.

It is clear that Richardson and Marshall's professional relationship was not a congenial one. However, there is simply no evidence that the basis of Marshall's alleged treatment or dislike of Richardson was gender-related. Further, there is no evidence that she has a general animus against males, as she even recommended a male as Richardson's replacement. This portion of Defendants' motion is granted.

Defendants Prairie and Marshall next move to dismiss Richardson's claim of retaliation for filing a complaint with the EEOC that alleged a violation of Title VII.

An individual cannot be held liable for claims under Title VII unless she meets the definition of "employer" under 42 U.S.C. § 2000e(b). The Fifth Circuit has interpreted this definition to include immediate supervisors "when delegated the employer's traditional rights, such as hiring and firing." *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) (citations omitted). There can be no liability under Title VII, however, "for the actions of mere co-workers." *Id*. at 228. In the case *sub judice*, Marshall was Richardson's immediate supervisor. Marshall claims that as executive director she had the ability to make final employment decisions. However, the evidence shows otherwise. Marshall appeared before Prairie's board and detailed Richardson's actions. She then made a recommendation for either further suspension or termination. A board member made a motion to terminate Richardson, which was seconded, and passed by a majority vote. Prairie's board did not delegate complete hiring and firing authority as evidenced by its termination of Richardson instead of Marshall simply terminating him. Thus, the court will analyze Richardson's retaliation claim solely against Prairie.

A *prima facie* case of retaliation requires Richardson to show:

> (1) he participated in an activity protected by Title VII; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse employment action.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

Richardson's filing of an EEOC complaint constitutes protected activity under Section 2000e-3(a) of Title 42. Specifically, this section prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has . . . made a charge . . . under this subchapter." 42 U.S.C.A. § 2000e-3(a) (West. 1981); *see also Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992).

Next, Richardson must show that he suffered an adverse employment action. It is undisputed that Prairie terminated his employment.

Richardson must then establish a causal link between retaliation and his termination. Richardson first argues that his prior exemplary employment record that was later tarnished through Marshall's actions proves causation. However, in viewing the evidence in a light most favorable to Richardson, Marshall's actions regarding his personnel file cannot establish causation. Richardson alleges that in July 2007 Marshall began sending him false memorandums requesting information already given to her by Richardson. He claims these instances continued until his suspension, a year and a half later. It is obvious that while Marshall may have disliked Richardson and may have attempted to create a paper trail that falsely reflected his work performance, Richardson's filing a complaint with the EEOC in 2009 cannot logically be what prompted her actions.

Richardson next argues that causation is established due to Prairie's reliance on Marshall's lies in following its typical policies and procedures regarding termination. However, since the board did in fact follow its typical policies, the fact that Marshall lied is irrelevant to this analysis. The board made a decision to terminate Richardson based on the information given to it and without the knowledge that the information could be false.

Finally, Richardson contends that causation is established through a temporal relationship between his EEOC filing and termination. "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). The Fifth Circuit has noted that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citations omitted).

Richardson filed his EEOC complaint on January 20, 2009. He was terminated on March 19, 2009, approximately two months later. The court finds that this short time lapse is sufficient to establish causation.

The burden then shifts to the defendants to articulate a legitimate, nonretaliatory reason for terminating Richardson. *McCoy*, 492 F.3d at 556. The mere production of the reason is sufficient to meet Defendants' burden. *Id*. Defendants maintain that Richardson was terminated due to misconduct stemming from the incident with Marshall, and refusal to complete job duties.

Richardson must show "'either (1) that Prairie's reason is not true, but is instead a pretext for [retaliation] (pretext alternative); or (2) that Prairie's reason, while true, is only one of the

9

reasons for [the] conduct, and another 'motivating factor' is the plaintiff's protected [activity] (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)).

Richardson argues that there is overwhelming evidence showing that he did not point a finger at Marshall, but merely refused to sign a document she attempted to have him sign without review. However, even if Marshall lied to the board as Richardson claims, this is not evidence that Prairie's board terminated Richardson unlawfully. There is simply no evidence before the court that the board members acted unreasonably or unlawfully in relying on representations about the incident made by Marshall and other employees, nor is there evidence that any board member had a history of problems with Richardson.

Richardson further contends that retaliation was one of the reasons for his discharge. However, Richardson has not offered a scintilla of proof to suggest that Prairie's board considered his previously filed EEOC complaint in reaching its decision. This claim is without merit and will be dismissed.

Defendant Marshall moves to dismiss Plaintiff Richardson's state law claim for malicious interference with employment relations. "A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim." *Gibson v. Estes*, 2007 WL 405043, at *2 (N.D. Miss. Feb. 2, 2007) (citing Roberson v. Winston County, MS, 2002 WL 449667 (N.D.Miss.2000)). Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. *Morrison v. Mississippi Enter. for Tech.*, 798 So.2d 567, 574 (¶ 23) (Miss. Ct. App. 2001).

Tortious interference with at-will employment can be the basis of a claim. *Levens v. Campbell*, 733 So. 2d 753, 760 (¶ 27) (Miss. 1999).

Richardson must show: 1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiff in his lawful business; 3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and 4) that the actual loss occurred. *Gibson*, 2007 WL 405043, at *2. "However, 'one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person.'" *Morrison*, 798 So. 2d at 574 (¶ 24) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985)).

Marshall argues that dismissal is warranted since an individual employee may not be held liable under Title VII. However, this is not the claim pled by Richardson against Defendant Marshall. Mississippi jurisprudence provides for a cause of action where an individual may be held liable for intentionally interfering with one's employment relationship, as discussed above.

In viewing the evidence in a light most favorable to Richardson, it is possible the jury could find that Marshall exhibited bad faith and that her acts were intentional and calculated to cause Richardson's termination.

Richardson states that Marshall drafted untruthful memorandums in order to paint his work performance in a false light. He further alleges that Marshall exaggerated the March 12, 2009 incident to Prairie's board members. Richardson maintains that he did not make a threatening gesture at Marshall's face, as alleged by her.

In support, Richardson presents the sworn testimony and affidavits of Prairie employees

who affirm Richardson's allegations.  Urissa Greenwood, a Prairie employee, stated that Marshall claimed she never received Richardson's work submissions when in fact Greenwood was aware of Marshall's receipt of the paperwork.  Greenwood's sworn affidavit also describes a conversation between Marshall and another employee after Richardson's recommendation to terminate the employee in which Marshall stated, "If anyone is going to be terminated, it would be him [Richardson], so long as I am executive director."  Further, Prairie employee Lakeysha Gandy, who witnessed the incident between Marshall and Richardson testified that Richardson simply talked with his hands and did not become aggressive or threatening.

It is undisputed that Marshall's evaluations and recommendation to Prairie's board are what led to Richardson's loss of employment. Her actions as described above tend to support an inference of bad faith.  This portion of Defendants' motion is denied.

Defendants' motion **[30]** is **GRANTED IN PART and DENIED IN PART**.  Defendant Prairie is dismissed as a party from this suit.

This the 9th day of May, 2011.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**